**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SEAN WACHTER, individually and on behalf of all
others similarly situated,

Case No.:

              Plaintiff,

    v.

**COMPLAINT**

PHRG MANAGEMENT, LLC d/b/a POWER HOME
REMODELING GROUP,

**JURY TRIAL DEMANDED**

              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff  SEAN  WACHTER  ("Plaintiff"),  on  behalf  of  himself  and  all  others  similarly

situated, by and through his attorneys, VALLI KANE & VAGNINI LLP, brings this action for

damages and other legal and equitable relief against Defendant PHRG MANAGEMENT, LLC

d/b/a POWER HOME REMODELING GROUP for violations of the Fair Labor Standards Act

("FLSA"), as amended, 29 U.S.C. §§ 201 *et seq.*; the New York Labor Law ("NYLL"); the New

York  Codes,  Rules  and  Regulations  ("NYCRR");  the  New  York  State  Human  Rights  Law

("NYSHRL"); and any other cause(s) of action that can be inferred from the facts set forth herein.

## INTRODUCTION

1.     This is a putative collective and class action brought by Plaintiff, a stage 4 cancer

survivor, challenging acts committed by Defendant against Plaintiff and those similarly situated,

which amount to violations of federal and state wage and hour laws.

2.     Defendant is a $700 million home remodeling company that operates throughout

the United States.

3.     Defendant employed Plaintiff and all other persons similarly situated as Customer

Development Representatives (collectively with Plaintiff, the "CDRs") who went door-to-door to

set up appointments between potential customers and Defendant's Sales Representatives. CDRs,

however, are not paid any overtime wages for hours worked in excess of 40 per week as they are only paid a salary of $1,000 per week and bonuses.

4.     Further, the CDRs are required to undergo a training period upon commencing their employment that involved 40 hours of training per week exclusive of their required homework and studying. Thus, they worked over 40 hours per week during their training period but are/were only paid $1,000 per week plus bonuses. Accordingly, CDRs are also not paid any overtime wages overtime wages during their training period.

5.     Defendant also employed Plaintiff and all other persons similarly situated as Remodeling Consultants (collectively with Plaintiff, the "RCs") to sell their services to potential customers. Upon their hiring, the RCs are required to undergo a training period that involved approximately 45 hours of training per week exclusive of their required homework and studying. During the training period, the RCs are not paid New York State's minimum wage or overtime as they are only paid a weekly salary of $500.00.

6.     Thus, pursuant to 29 U.S.C. § 216(b), Plaintiff brings this action on behalf of himself and two collectives of persons who: (i) are and were employed by Defendant as CDRs throughout the United States during the past three years through the final date of the disposition of this action who are/were not paid the statutorily required rate of one and a half times their hourly rate for all hours worked in excess of 40 per workweek; and (ii) are and are/were employed by Defendant as RCs throughout the United States during the past three (3) years through the final date of the disposition of this action who are/were not paid the statutorily required rate of one and a half (1½) times their hourly rate for all hours worked in excess of 40 per workweek during their training period. They are entitled to recover: (i) unpaid and incorrectly paid wages; (ii) unpaid overtime wages; (iii) liquidated damages; (iv) interest; (v) attorneys' fees and costs; and (vi) such

other and further relief as this Court finds necessary and proper.

7.      Plaintiff additionally brings this action pursuant to Fed. R. Civ. P. 23, on behalf of himself and two classes of persons employed by Defendant as: (i) CDRs within the State of New York during the past six years through the final date of the disposition of this action who are/were: (a) not paid the statutorily required rate of one and a half times their hourly rate for all hours worked in excess of 40 per workweek; (b) are/were not paid weekly; and/or (c) not issued the proper wage statements pursuant to the NYLL, which violates the NYLL and the NYCRR; and (ii) RCs within the State of New York during the past six years through the final date of the disposition of this action who are/were: (a) not paid the statutorily required rate of one and a half (1½) times their hourly rate for all hours worked in excess of 40 per workweek during their training period; (b) not paid New York State's Minimum Wage during their training period; and/or (c) not issued the proper wage statements pursuant to the NYLL, which violates the NYLL and the NYCRR. They are entitled to recover: are entitled to recover: (i) unpaid overtime wages; (ii) unpaid and incorrectly paid wages; (iii) liquidated damages; (iv) penalties; (v) interest; (vi) attorneys' fees and costs; and (vii) such other and further relief as this Court finds necessary and proper.

8.      Plaintiff also individually brings this action pursuant to the NYSHRL for discrimination, harassment, and retaliation on the basis of his disability and is entitled to recover (i) back pay; (ii) front pay; (iii) emotional damages; (iv) punitive damages; (v) interest; (vi) attorneys' fees and costs; and (vii) such other and further relief as this Court finds necessary and proper.

## <u>JURISDICTION AND VENUE</u>

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which

confers original jurisdiction upon this Court for actions arising under the laws of the United States.

10.     Venue is proper in this Court pursuant to 29 U.S.C. §§ 201 *et seq*., in as much as this judicial district lies in a State in which the unlawful employment practices occurred. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (c), in that Defendant maintains facilities, conducts business, and resides in this district.

11.     The Court's supplemental jurisdiction is invoked to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts such that they form part of the same case or controversy under Article III of the United States Constitution.

## THE PARTIES

12.     At all relevant times, Plaintiff was an "employee" within the meaning of the FLSA, the NYLL, the NYCRR, and the NYSHRL.

13.     Upon information and belief, Defendant is a limited liability corporation organized under the laws of the State of Delaware and has its corporate headquarters located in Chester, Pennsylvania.

14.     Defendant transacted and continues to transact business in New York and within Suffolk County by employing Plaintiff and all those similarly situated as CDRs and RCs. Defendant also transacted and continues to transact business in New York and within Suffolk County by providing home remodeling services to the citizens of Suffolk County.

15.     Defendant has at all relevant times been an "employer" covered by the FLSA, the NYLL, the NYCRR, and the NYSHRL.

16.     Upon information and belief, the amount of qualifying annual volume of business for Defendant exceeds $500,000.00 and thus subjects Defendant to the FLSA.

4

17.     Upon information and belief, Defendant is engaged in interstate commerce, independently subjecting Defendant to the FLSA.

18.     Upon information and belief, throughout the relevant time period, Defendant employed over 100 employees.

19.     At all relevant times, Defendant had knowledge that failing to pay the CDRs overtime for all hours worked in excess of 40 per workweek violates the FLSA, the NYLL, and the NYCRR.

### STATEMENT OF FACTS

**I.     Facts Pertaining to the CDRs**

20.     Defendant is a home remodeling company that operates throughout the United States and primarily installs roofing, siding, and windows.

21.     Defendant employs CDRs to obtain sales appointments so that the RC (the Sales Representatives) can make sales.

22.     The CDRs are a part of Defendant's Customer Development Department, which was formerly named the Marketing Department. The Customer Development Department is separate and apart from Defendant's Sales Department.

23.     Upon hiring, the CDRs enter into an eight-week training period where they spend approximately 40 hours per week being trained and two hours per week doing mandatory studying and homework. The CDRs are only paid $1,000.00 per week for their training period plus bonuses. They are not paid an overtime premium for hours worked in excess of 40 hours.

24.     After completing the training period, the CDRs begin to perform their actual job duties, which includes daily meetings at both Defendant's facility and at a location set by their team lead, driving to their designated neighborhood, walking door-to-door to inform residents of

Defendant's business, inquiring whether the potential customer is interested in a sales appointment, and booking the appointment.

25.     The CDR's primary duty, however, is to walk door-to-door to get customers to book a sales appointment.

26.     The CDRs are required to adhere to a script created by Defendant when speaking to a potential customer.

27.     If a potential customer wants to book an appointment, the CDR calls Defendant's call center in Chester, Pennsylvania, hands the potential customer the phone, and the call center sets up the appointment directly with the potential customer. The CDR then leaves and walks to the next house to repeat the process.

28.     After booking the appointment, an RC (the sales representative), calls the potential customer to confirm the appointment. If the potential customer confirms then the RC meets with the potential customer to make the sale.

29.     The CDRs are not involved in the sales process. Once an appointment is booked they no longer work with the potential customer. Their work with respect to the customer is finished. In essence, the CDRs are marketers. Thus, the CDRs are not exempt under the outside sales exemption. *See* 29 C.F.R. § 541.503(a) ("[P]romotional work that is incidental to sales made, or to be made, by someone else is not exempt outside sales work.").

30.     The CDRs alternate between five and six-day work weeks. They also work approximately 10 hours per day. Accordingly, they work approximately 50 hours when they work five-day workweeks and they work approximately 60 hours when they work six-day workweeks.

31.     The CDRs are paid a $1,000 per week salary on a bi-weekly basis. They are not paid an overtime premium for any hours worked in excess of 40 hours per workweek.

32.     The CDRs also receive a bonus based on the number of appointments they made.

33.     The CDRs spend approximately 20 to 30 hours of their weekly hours worked walking from door to door. Thus, more than 25% of their workweek is spent performing manual labor.

34.     Accordingly, Defendant willfully violates the FLSA by paying the CDRs a weekly $1,000 salary without an overtime premium for their hours worked in excess of 40 per week.

35.     Defendant also willfully violates the NYLL and the NYCRR by: (i) paying the CDRs a weekly $1,000 salary without an overtime premium for their hours worked in excess of 40 per week; (ii) not paying them on a weekly basis; and (iii) not issuing them the proper wage statements in violation of NYLL § 195 as their paystubs are devoid of their hours worked, the correct rate of pay, and the total correct pay.

**II.     Facts Pertaining to the RCs**

36.     As stated above, once a CDR books an appointment, an RC calls the potential customer to confirm the appointment. The RC meets with the potential customer to sell them Defendant's services if the appointment is confirmed.

37.     The RCs, unlike the CDRs, are under Defendant's Sales Department and their primary job duties is making sales.

38.     Like the CDRs, the RCs are required to undergo a four-week training period. The training period consists of approximately 45 hours per week of training. It also includes about five hours per week studying and performing homework such as measuring their own windows. The studying and homework are required and monitored by Defendant. Thus, the RCs work approximately 50 hours per week during their training period.

39.     Also, like the CDRs, the RCs are only paid $500.00 per week. Accordingly, the

RCs are paid less than New York State's minimum wage and they do not receive an overtime premium for the hours worked in excess of 40 per week.

40.     Although the RCs are exempt from overtime once they began acquiring sales, they are not exempt during their training period because their primary job duty during this time is training.

41.     Accordingly, Defendant willfully violates the FLSA by paying the RCs a weekly $500 salary without an overtime premium for their hours worked in excess of 40 per week during their training period.

42.     Defendant also willfully violates the NYLL and the NYCRR by: (i) failing to pay the RCs a weekly $500 salary without an overtime premium for their hours worked in excess of 40 per week during their training period; (ii) failing to pay them New York State's minimum wage during their training period; and (iii) not issuing them the proper wage statements in violation of NYLL § 195 as their paystubs are devoid of their hours worked, the correct rate of pay, and the total correct pay.

### III.    Facts Pertaining to Plaintiff

43.     Plaintiff is a stage 4 melanoma cancer survivor. Specifically, Plaintiff was only given 12 weeks to live after his melanoma spread to his brain and lungs.

44.     Plaintiff continues to suffer from the side effects of having stage 4 cancer and the resulting chemotherapy. For example, Plaintiff's breathing is substantially impaired.

45.     Upon successfully beating his cancer and terminal diagnosis, Plaintiff applied for an RC position with Defendant and was promised that position.

46.     In or around July 2022, Plaintiff began working for Defendant. Defendant, however, assigned him to work as a CDR despite its promise to employ him as an RC..

47.     On or around August 12, 2022, Sean Harrington, an RC, posted the following in the Long Island Customer Development chat:



48.     Plaintiff took a direct offense to Mr. Harrington's posting as it is extremely derogatory to cancer victims and survivors.

49.     As a CDR, Plaintiff had the same training period, worked the same hours per week, and was paid in the manner described in Section I above.

50.     In or around September 2022, Plaintiff had his 50-day review with Vincent Balsamo ("Mr. Balsamo"), the Vice President of Customer Development. During this meeting, Plaintiff informed Mr. Balsamo that he had a torn posterior cruciate ligament and that the 20-30 hours per week of walking was having a negative impact on him. He also informed Mr. Balsamo that the 20-30 hours per week of walking was difficult due to the damage caused by his cancer and intense chemotherapy.  He then requested a disability accommodation to be transferred to an RC position—the position that he was hired for. Mr. Balsamo responded that Plaintiff "sucked" at his job and that "if [he] knew [he] had cancer why would [he] take the job." Plaintiff then said he was hired for the RC job and Mr. Balsamo replied, "If you are going to keep making excuses for your problems, why don't you just quit? If you ever get these issues sorted maybe I'll rehire you." Accordingly, Mr. Balsamo immediately rejected Plaintiff's accommodation request.

51.     During the first week of October 2022, Mr. Harrington greeted Plaintiff and called him "cancer boy."

52.     On October 3, 2022, Plaintiff obtained a physician's note requiring a position transfer accommodation and sent it to Defendant's human resources department via email with Mr. Balsamo carbon copied on it. Notably, upon seeing Plaintiff, Mr. Balsamo stated, "I see what you did there" to Plaintiff (referring to involving human resources).

53.     Shortly thereafter, Mr. Balsamo summoned Plaintiff to a meeting and told him that he was being transferred to an RC position. He also stated, "I just want to let you know that there are a lot of people who don't fucking want you here. You are going to find out the hard way and if you think I am dick, I am a cupcake compared to Chris Geslani." Chris Geslani ("Mr. Geslani")

is the Vice President of the Sales Department.

54.     Thereafter, Plaintiff began the RC's training period and worked the same hours and was paid in the same manner alleged above. Specifically, during the workweek of August 28, 2022, Plaintiff spent 48.5 training excluding his time spent studying and doing homework. Plaintiff, however, was only paid $500.00 for this workweek without any overtime pay.

55.     Two days into the RC training period, Plaintiff contracted COVID-19 and he was prescribed the experimental drug Paxlovid due to his weakened immune system. Paxlovid caused Plaintiff to experience episodes of intense vomiting.

56.     Plaintiff requested that he be trained virtually via Zoom™ while he had COVID-19 and Defendant granted this accommodation request. Mr. Geslani, however, told Plaintiff that if he was going to accommodate him that he "needed to be there" and that he did not "want to hear that [he] needs to go to the doctor."  When Plaintiff informed Mr. Geslani that Defendant's human resources department granted him time off for any doctor's appointments, Mr. Geslani replied, "I don't care what HR says. I am in charge."

57.     Further, Mr. Geslani denied Plaintiff's break requests during the virtual training because Plaintiff "agreed" to be trained virtually. The breaks requested were so that Plaintiff could use the bathroom when he became nauseous due to the Paxlovid.

58.     Notably, during the RC training period, Mr. Geslani informed Plaintiff that he monitors when he and the other class members are studying and completing their homework through their IPads™.

59.     Plaintiff then returned for the second week of training and wore a mask as a precaution to his fellow classmates. Plaintiff also requested breaks so that he could leave the class to temporarily take his mask off to catch his breath because his lungs are severely compromised

from cancer. This accommodation request was denied.

60.     Shortly after his return, Mr. Harrington asked Plaintiff why he was in RC training if he did not do well as a CDR. He answered his own question by stating, "Ah, I know you played your cancer card."

61.     On the Friday of his second week of training, Plaintiff was suffering from a migraine headache as a result of COVID-19 and he asked Mr. Geslani if he minded turning the lights slightly down. Mr. Geslani denied Plaintiff's accommodation request and questioned, "Did you go drinking during lunch?" Plaintiff said "no" and Mr. Geslani said, "Well maybe you need to." Plaintiff then asked to leave early since Mr. Geslani refused to turn the lights down. Again, Mr. Geslani denied the accommodation request and reminded Plaintiff that he was the one who requested to continue with his training virtually even though he had COVID-19.

62.     Thereafter, Plaintiff had his training evaluation and was supposed to be evaluated by team lead Randal Camacho. Mr. Geslani, however, ordered that he personally evaluate Plaintiff, which is not standard practice.

63.     During the evaluation, Mr. Geslani asked Plaintiff how he would grade himself. Plaintiff modestly said he would give himself a 75 and Mr. Geslani replied, "I am a Chaminade guy and 75 is failing. You failed." He then asked if that was "really [Plaintiff's] best effort?" Plaintiff responded that he tried his best given the circumstances and Mr. Geslani stated, "You chose to do it. I did not even want to do this" referring to the virtual training accommodation. Plaintiff then said, "Unfortunately, you have to accommodate me" to which Mr. Geslani replied, "I did accommodate you mother fucker," "COVID is nothing. I've had it twice," and "You talk all this cancer stuff. Cancer is supposed to make you strong and you're nothing but weak."

64.     Mr. Geslani ended the conversation by stating, "I'll give you until next Monday to

re-test. There's your fucking accommodation" and "If you don't think anyone wants you to here do us a favor and fucking leave."

65.     Thereafter, Plaintiff informed Mr. Geslani that he was going to be a few minutes late to work due to a lung flare-up and Mr. Geslani replied, "What do you have asthma now?" He also later stated, "Aren't you some sort of finance wiz. Don't you have a pot of gold you can invest so you can stop bothering us?"

66.     On November 3, 2022, Plaintiff was constructively discharged due to the toxic work environment implemented by Defendant's executives and by his coworkers.

## FLSA COLLECTIVE ACTION ALLEGATIONS

### I.     The CDR Collective

67.     Plaintiff seeks to bring this suit as a collective action pursuant to 29 U.S.C. § 216(b) on his own behalf as well as those in the following CDR Collective:

> All Customer Development Representatives employed by Defendant throughout the United States during the past three years through the final date of disposition of this action, who are or were required to work in excess of 40 hours per workweek without compensation at the statutorily required rate of one and a half times their hourly rate for all hours worked in excess of 40 per workweek.

68.     At all relevant times, Plaintiff was similarly situated to all such individuals in the CDR Collective[1] because, while employed by Defendant, Plaintiff and all CDR Collective Plaintiffs performed similar tasks, are/were subject to the same laws and regulations, are/were paid in the same or substantially similar manner, are/were paid the same or similar rate, are/were required to work in excess of 40 hours per workweek and are/were subject to Defendant's policies and practices of willfully failing to pay them at the statutorily required rate of one and a half times their hourly rate for all hours worked in excess of 40 per workweek.

---

[1] Hereinafter referred to as the "CDR Collective Plaintiffs."

69.     Defendant is and has been aware of the requirement to pay Plaintiff and the CDR Collective Plaintiffs at a rate of one and a half times their hourly rate for all hours worked in excess of 40 per workweek, yet willfully chose not to.

70.      The CDR Collective Plaintiffs, are readily discernable and ascertainable. All CDR Collective Plaintiffs' contact information is readily available in Defendant's records. Notice of this collective action can be made as soon as the Court determines it appropriate to do so.

71.     The number of CDR Collective Plaintiffs in the collective are too numerous to join in a single action, necessitating collective recognition.

72.     All questions relating to Defendant's violation of the FLSA share a common factual basis as set forth herein. No claims under the FLSA relating to Defendant's failure to pay statutorily required rate of one and a half times the CDR Collective Plaintiffs' hourly rate for all hours worked in excess of 40 per workweek are specific to Plaintiff and the claims asserted by Plaintiff are typical of those of members of the CDR Collective.

73.     Plaintiff will fairly and adequately represent the interests of the CDR Collective and have no interests conflicting with the CDR Collective.

74.     A collective action is superior to all other methods and is necessary in order to fairly and completely litigate violations of the FLSA.

75.     Plaintiff's attorneys are familiar and have experience with collective and class action litigation, as well as employment and labor law litigation.

76.     The public will benefit from the case being brought as a collective action because doing so will serve the interests of judicial economy by reducing a multitude of claims to a single litigation. Prosecution of separate actions by individual CDR Collective Plaintiffs creates a risk for varying results based on identical fact patterns as well as disposition of the collective's interests

without their knowledge or contribution.

77.     The questions of law and fact are nearly identical for all CDR Collective Plaintiffs and therefore proceeding as a collective action is ideal. Without judicial resolution of the claims asserted on behalf of the proposed collective, Defendant's continued violations of the FLSA will undoubtedly continue.

## II.   The RC Collective

78.     Plaintiff seeks to bring this suit as a collective action pursuant to 29 U.S.C. § 216(b) on his own behalf as well as those in the following RC Collective:

> All Remodeling Consultants employed by Defendant throughout the United States during the past three years through the final date of disposition of this action, who are or were required to work in excess of 40 hours per workweek during their training period without compensation at the statutorily required rate of one and a half times their hourly rate for all hours worked in excess of 40 per workweek.

79.     At all relevant times, Plaintiff was similarly situated to all such individuals in the RC Collective[2] because, while employed by Defendant, Plaintiff and all RC Collective Plaintiffs performed similar tasks, are/were subject to the same laws and regulations, are/were paid in the same or substantially similar manner, are/were paid the same or similar rate, were required to work in excess of 40 hours per workweek and are/were subject to Defendant's policies and practices of willfully failing to pay them at the statutorily required rate of one and a half times their hourly rate for all hours worked in excess of 40per workweek.

80.     Defendant is and has been aware of the requirement to pay Plaintiff and the RC Collective Plaintiffs at a rate of one and a half times their hourly rate for all hours worked in excess of 40 per workweek, yet willfully chose not to.

81.      The RC Collective Plaintiffs, are readily discernable and ascertainable. All RC

---

[2] Hereinafter referred to as the "RC Collective Plaintiffs."

Collective Plaintiffs' contact information is readily available in Defendant's records. Notice of this collective action can be made as soon as the Court determines it appropriate to do so.

82.     The number of RC Collective Plaintiffs in the collective are too numerous to join in a single action, necessitating collective recognition.

83.     All questions relating to Defendant's violation of the FLSA share a common factual basis as set forth herein. No claims under the FLSA relating to Defendant's failure to pay statutorily required rate of one and a half times the RC Collective Plaintiffs' hourly rate for all hours worked in excess of 40 per workweek are specific to Plaintiff and the claims asserted by Plaintiff are typical of those of members of the RC Collective.

84.     Plaintiff will fairly and adequately represent the interests of the RC Collective and have no interests conflicting with the RC Collective.

85.     A collective action is superior to all other methods and is necessary in order to fairly and completely litigate violations of the FLSA.

86.     Plaintiff's attorneys are familiar and have experience with collective and class action litigation, as well as employment and labor law litigation.

87.     The public will benefit from the case being brought as a collective action because doing so will serve the interests of judicial economy by reducing a multitude of claims to a single litigation. Prosecution of separate actions by individual RC Collective Plaintiffs creates a risk for varying results based on identical fact patterns as well as disposition of the collective's interests without their knowledge or contribution.

88.     The questions of law and fact are nearly identical for all RC Collective Plaintiffs and therefore proceeding as a collective action is ideal. Without judicial resolution of the claims asserted on behalf of the proposed collective, Defendant's continued violations of the FLSA will

undoubtedly continue.

## FED. R. CIV. P.  23 CLASS ACTION ALLEGATIONS

### I.      The CDR Class

89.     Plaintiff seeks to maintain this action as a class action pursuant to FED. R. CIV. P. 23, on behalf of those who, during the previous six years, were/are subjected to violations of the NYLL and the NYCRR.

90.     The CDR Class which Plaintiff seeks to define includes:

> All Customer Development Representatives employed by Defendant in New York during the past six years through the final date of disposition of this action, who are or were: (i) not paid the statutorily required rate of one and a half times their hourly rate for all hours worked in excess of 40 per workweek; (ii) not paid weekly; and/or (iii) not issued the proper wage statements pursuant to the NYLL.

91.     The number of class members protected by the NYLL and the NYCRR who have suffered under Defendant's violations of the NYLL and the NYCRR as set forth herein, are in excess of 40 and thus are too numerous to join in a single action, necessitating class recognition.

92.     All questions relating to the CDR Class's allegations under the NYLL and the NYCRR share a common factual basis with those raised by the claims of Plaintiff. No claims asserted herein under the NYLL and the NYCRR are specific to Plaintiff or any proposed CDR Class member and the claims of Plaintiff are typical of those asserted by the proposed CDR Class.

93.     Plaintiff will fairly and adequately represent the interests of all members of the proposed CDR Class.

94.     A class action is superior to all other methods of adjudication and is necessary in order to fairly and completely litigate the CDR Class's allegations that Defendant violated the NYLL and the NYCRR.

95.     The class members of the proposed CDR Class are readily discernable and ascertainable. Contact information for all members of the proposed CDR Class[3] is readily available from Defendant since such information is likely to be contained in their personnel files. Notice of this class action can be provided by any means permissible under the FED. R. CIV. P. 23 requirements.

96.     Plaintiff asserts these claims on his own behalf as well as on behalf of the CDR Class Plaintiffs through his attorneys who are experienced in class action litigation as well as employment litigation.

97.     Plaintiff is able to fairly represent and properly protect the interests of the absent members of the proposed CDR Class and have no interests conflicting with those of the CDR Class.

98.     The public will benefit from this case being brought as a class action because it serves the interests of judicial economy by saving the Court's time and effort and by reducing a multitude of claims to a single litigation. Prosecution of separate actions by individual CDR Class Plaintiffs creates a risk of varying results based on identical fact patterns as well as disposition of the classes' interests without their knowledge or contribution.

99.     Because of the nature of wage and hour claims brought during the course of employment, class members are often fearful of filing claims against their employers and would benefit from Plaintiff's willingness to proceed against Defendant. The anonymity inherent in a class action suit further provides insulation against retaliation and/or undue stress and fear for the CDR Class Plaintiffs' jobs and continued employment.

100.    The questions of law and fact that are nearly identical for all class members make

---

[3] Hereinafter referred to as the "CDR Class Plaintiffs."

proceeding as class action ideal. Without judicial resolution of the claims asserted on behalf of the proposed CDR Class, continued violations of the NYLL and the NYCRR will undoubtedly continue.

101.    Whether Plaintiff and the CDR Class Plaintiffs are/were: (i) paid the statutorily required rate of one and a half (1½) times their hourly rate for all hours worked in excess of 40 per workweek; (ii) paid weekly; and/or (iii) issued the proper wage statements pursuant to the NYLL are common questions which can readily be resolved through the class action process.

**II.     The RC Class**

102.    Plaintiff seeks to maintain this action as a class action pursuant to FED. R. CIV. P. 23, on behalf of those who, during the previous six years, were/are subjected to violations of the NYLL and the NYCRR.

103.    The RC Class which Plaintiff seeks to define includes:

> All Customer Development Representatives employed by Defendant in New York during the past six years through the final date of disposition of this action, who are or were: (i) not paid the statutorily required rate of one and a half times their hourly rate for all hours worked in excess of 40 per workweek; (ii) not New York State's minimum wage for all hours worked; were not paid New York State's minimum wage and/or (iv) not issued the proper wage statements pursuant to the NYLL.

104.    The number of class members protected by the NYLL and the NYCRR who have suffered under Defendant's violations of the NYLL and the NYCRR as set forth herein, are in excess of 40 and thus are too numerous to join in a single action, necessitating class recognition.

105.    All questions relating to the RC's allegations under the NYLL and the NYCRR share a common factual basis with those raised by the claims of Plaintiff. No claims asserted herein under the NYLL and the NYCRR are specific to Plaintiff or any proposed RC Class member and the claims of Plaintiff are typical of those asserted by the proposed RC Class.

106.    Plaintiff will fairly and adequately represent the interests of all members of the proposed RC Class.

107.    A class action is superior to all other methods of adjudication and is necessary in order to fairly and completely litigate the RC Class's allegations that Defendant violated the NYLL and the NYCRR.

108.    The class members of the proposed RC Class are readily discernable and ascertainable. Contact information for all members of the proposed RC Class[4] is readily available from Defendant since such information is likely to be contained in their personnel files. Notice of this class action can be provided by any means permissible under the FED. R. CIV. P. 23 requirements.

109.    Plaintiff asserts these claims on his own behalf as well as on behalf of the RC Class Plaintiffs through his attorneys who are experienced in class action litigation as well as employment litigation.

110.    Plaintiff is able to fairly represent and properly protect the interests of the absent members of the proposed RC Class and have no interests conflicting with those of the RC Class.

111.    The public will benefit from this case being brought as a class action because it serves the interests of judicial economy by saving the Court's time and effort and by reducing a multitude of claims to a single litigation. Prosecution of separate actions by individual RC Class Plaintiffs creates a risk of varying results based on identical fact patterns as well as disposition of the classes' interests without their knowledge or contribution.

112.    Because of the nature of wage and hour claims brought during the course of employment, class members are often fearful of filing claims against their employers and would

---

[4] Hereinafter referred to as the "CDR Class Plaintiffs."

benefit from Plaintiff's willingness to proceed against Defendant. The anonymity inherent in a

class action suit further provides insulation against retaliation and/or undue stress and fear for the

RC Class Plaintiffs' jobs and continued employment.

113.     The questions of law and fact that are nearly identical for all class members make

proceeding as class action ideal. Without judicial resolution of the claims asserted on behalf of the

proposed RC Class, continued violations of the NYLL and the NYCRR will undoubtedly continue.

114.     Whether Plaintiff and the RC Class Plaintiffs are/were: (i) paid the statutorily

required rate of one and a half (1½) times their hourly rate for all hours worked in excess of forty

(40) per workweek; (ii) paid New York State's minimum wage for all hours worked; and/or (iii)

issued the proper wage statements pursuant to the NYLL are common questions which can readily

be resolved through the class action process.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION FOR A VIOLATION OF
**The Fair Labor Standards Act, 29 U.S.C. § 207, Made by Plaintiff on Behalf of
All CDR and RC Collective Plaintiffs
(Failure to Pay Overtime)**

115.     Plaintiff and the CDR and RC Collective Plaintiffs re-allege and incorporate by

reference all allegations in all preceding paragraphs.

116.     Throughout the period covered by the applicable statute of limitations, Plaintiff and

other FLSA Plaintiffs were required to work and did in fact work in excess of 40 hours per

workweek.

117.     Throughout the period covered by the applicable statute of limitations, Defendant

knowingly failed to pay Plaintiff and the CDR and RC Collective Plaintiffs the statutorily required

overtime rate for all hours worked in excess of 40 per workweek.

118.     Defendant's conduct was willful and lasted for the duration of the relevant time

period.

119.    Defendant's conduct was in violation of the Fair Labor Standards Act, 29 U.S.C. §

207.

## AS AND FOR A SECOND CAUSE OF ACTION FOR A VIOLATION OF
### The New York Labor Law Made and the New York Codes, Rules, and Regulations § 142-2.2 by Plaintiff on Behalf of All CDR and RC Class Plaintiffs
### (Failure to Pay Overtime)

120.    Plaintiff and the CDR and RC Class Plaintiffs re-allege and incorporate by

reference all allegations in all preceding paragraphs.

121.    Throughout the period covered by the applicable statute of limitations, Plaintiff and

other CDR and RC Class Plaintiffs are required to work and did in fact work in excess of 40 hours

per workweek.

122.    Throughout the period covered by the applicable statute of limitations, Defendant

knowingly failed to pay Plaintiff and the CDR and RC Class Plaintiffs the statutorily required

overtime rate for all hours worked in excess of 40 per workweek.

123.    Defendant's conduct was willful and lasted for the duration of the relevant time

period.

124.    Defendant's conduct was in violation of the New York Labor Law and the New

York Codes, Rules, and Regulations § 142-2.2.

## AS AND FOR A THIRD CAUSE OF ACTION FOR A VIOLATION OF
### The New York Labor Law § 652  and the
### New York Codes, Rules, and Regulations § 142-2.1
### Made by Plaintiff on Behalf of All RC Class Plaintiffs
### (Failure to Pay Minimum Wage)

125.    Plaintiff and the RC Class Plaintiffs re-allege and incorporate by reference all

allegations in all preceding paragraphs.

126.    Throughout the relevant time period, Defendants knowingly failed to pay Plaintiff

and the RC Class Plaintiffs the statutorily required New York State minimum wage for all hours worked per workweek by paying them a $500.00 per week salary during their training periods.

127.     Plaintiff and the RC Class Plaintiffs are entitled to payment at the statutory New York State minimum wage for all hours worked per workweek, including hours worked while training.

128.     Defendant's conduct was willful and lasted for the duration of the relevant time period.

129.     Defendant's conduct was in violation of the New York Labor Law § 652 and the New York Codes, Rules, and Regulations § 142-2.1.

### AS AND FOR A FOURTH CAUSE OF ACTION FOR A VIOLATION OF
**The New York Labor Law § 191 Made by Plaintiff on Behalf of**
**All CDR Class Plaintiffs**
**(Failure to Timely Pay Wages)**

251.     Plaintiff and the CDR Class Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

252.     Throughout the period covered by the applicable statute of limitations, Defendant paid Plaintiff and the CDR Class Plaintiffs every two weeks.

253.     Throughout the period covered by the applicable statute of limitations, Plaintiff and the CDR Class Plaintiffs spent at least 25% of their working time engaged in physical labor, and thus are entitled to be paid weekly.

254.     Defendant's conduct was willful and lasted for the duration of the relevant time period.

255.     Defendant's conduct was in violation of the New York Labor Law § 191.

### AS AND FOR A FIFTH CAUSE OF ACTION FOR A VIOLATION OF
**The New York Labor Law § 195, Made by Plaintiff on Behalf of**
**All CDR and RC Class Plaintiffs**
**(Failure to Provide Proper Wage Statements)**

256.   Plaintiff and the CDR and RC Class Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

257.   Pursuant to the NYLL, employers are required to furnish employees with every payment of wages a statement that includes, among other things, their overtime rate or rates of pay, the accurate number of regular hours worked, the accurate number of overtime hours worked, and its telephone number.

258.   Throughout the relevant time period, Defendant's knowingly failed to provide Plaintiff and the CDR and RC Class Plaintiffs with the required wage statements pursuant to NYLL.

259.   Defendant's conduct was willful and lasted for the duration of the relevant time period.

260.   Defendant's conduct was in violation of New York Labor Law § 195.

261.   Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

### AS AND FOR A SIXTH CAUSE OF ACTION FOR A VIOLATION OF
**The New York State Human Rights Law**
**(Retaliation)**

262.   Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

263.   Plaintiff has disabilities as defined by the NYSHRL.

264.   Plaintiff engaged in protected activity by requesting disability accommodations.

265.   Defendant responded to Plaintiff's protected activity by subjecting him to a

retaliatory hostile work environment.

266.     Defendant's conduct was willful and in violation of the New York State Human Rights Law.

### AS AND FOR A SEVENTH CAUSE OF ACTION FOR A VIOLATION OF
**The New York State Human Rights Law**
**(Hostile Work Environment)**

267.     Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

268.     Plaintiff has disabilities as defined by the NYSHRL and is a member of a protected class under the NYSHRL.

269.     Defendant subjected Plaintiff to a hostile work environment on the basis of his disabilities.

270.     Defendant's conduct was willful and in violation of the New York State Human Rights Law.

### AS AND FOR AN EIGHTH CAUSE OF ACTION FOR A VIOLATION OF
**The New York State Human Rights Law**
**(Failure to Accommodate)**

271.     Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

272.     Plaintiff has disabilities as defined by the NYSHRL and is a member of a protected class under the NYSHRL.

273.     Plaintiff requested reasonable accommodations for his disabilities from Mr. Balsamo and Mr. Geslani and was denied.

274.     Defendant's conduct was willful and in violation of the New York State Human Rights Law.

### AS AND FOR A NINTH CAUSE OF ACTION FOR A VIOLATION OF
### The New York State Human Rights Law
### (Constructive Discharge)

275.    Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

276.    Plaintiff has disabilities as defined by the NYSHRL and is a member of a protected class under the NYSHRL.

277.    Plaintiff was subjected to a hostile work environment in retaliation for his accommodation requests and on the basis of his disability.

278.    Plaintiff was also subjected to a hostile work environment on the basis of his disabilities.

279.    The hostile work environment fostered by Defendant was so intolerable that Plaintiff was constructively discharged.

280.    Defendant's conduct was willful and in violation of the New York State Human Rights Law.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and all Collective and Class Plaintiffs demand judgment against Defendant as follows:

A.    At the earliest possible time, Plaintiff should be allowed to give notice of the purported Collectives, or the Court should issue such notice, to all members of the purported Collectives, defined herein. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages and/or benefits;

B.    Designation of Plaintiff as representative of the FLSA Collectives defined herein,

and Plaintiff's counsel as Collective Counsel;

      C.     Designation of Plaintiff as representative of the Fed. R. Civ. P. 23 Classes defined herein;

      D.     Certification of this action as a collective action pursuant to 29 U.S.C. § 216(b) for the purposes of the claims brought on behalf of all proposed CDR and RC Collective members under the FLSA;

      E.     Certification of this action as a class action pursuant to Fed. R. Civ. P. 23 for the purposes of the claims brought on behalf of all proposed CDR and RC Class members under the NYLL and the NYCRR;

      F.     Preliminary and permanent injunctions against Defendant and its officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

      G.     A judgment declaring that the practices complained of herein are unlawful and in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, the New York Labor Law, the New York Codes, Rules and Regulations, and the New York State Human Rights Law;

      H.     All damages which Plaintiff and all Collective and Class Plaintiffs have sustained as a result of Defendant's conduct, including: (i) back pay for unpaid overtime, unpaid wages, unpaid "spread of hours" pay, (ii) liquidated damages, and (iii)  penalties;

      I.     All damages which Plaintiff has individually sustained as a result of Defendant's conduct, including back pay, general and special damages for lost compensation and job benefits he would have received but for Defendant's unlawful discriminatory and retaliatory conduct, front pay, punitive damages, and compensatory damages including for emotional distress humiliation,

embarrassment, and anguish;

  J.  An award to Plaintiff and all Collective and Class Plaintiffs of pre-judgment interest at the highest level rate, from and after the date of service of the initial complaint in this action on all unpaid wages from the date such wages were earned and due;

  K.  An award to Plaintiff and all Collective and Class Plaintiffs representing Defendant's share of FICA, FUTA, state unemployment insurance, and any other required employment taxes;

  L.  An award to Plaintiff and all Collective and Class Plaintiffs for the amount of unpaid wages, including interest thereon, liquidated damages subject to proof, and penalties;

  M.  Awarding Plaintiff and all Collective and Class Plaintiffs their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs;

  N.  Pre-judgment and post-judgment interest, as provided by law; and

  O.  Granting Plaintiff and all Collective and Class Plaintiffs other and further relief as this Court finds necessary and proper.

## **DEMAND FOR TRIAL BY JURY**

  Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this complaint.


Dated:  November 23, 2022
     Garden City, New York

         Respectfully submitted,

         */s/ Alexander M. White*
         James A. Vagnini, Esq.
         Alexander M. White, Esq.
         **Valli Kane & Vagnini LLP**

600 Old Country Road, Suite 519
Garden City, New York 11530
T: (516) 203-7180
F: (516) 706-0248

*Attorneys for Plaintiff*